**VAQUERIA TRES MONJITAS, INC.
and Suiza Dairy, Inc., Plaintiffs**

v.

**Luis RIVERA CUBANO,
et al., Defendants.**

Civil No. 04–1840(SEC).

United States District Court,
D. Puerto Rico.

Sept. 27, 2005.

Enrique Nassar–Rizek, Maxine M. Brown–Vazquez, Enrique Nassar Rizek & Associates, Jose R. Lazaro–Paoli, Rafael Escalera–Rodriguez, Thomas Trebilcock–Horan, Reichard & Escalera, San Juan, PR, for Plaintiffs.

Edward W. Hill–Tollinche, Humberto Guzman–Rodriguez, Kermit Ortiz–Morales, Ortiz & Ortiz Law Office, PSC, Michael C. McCall, Michael Craig McCall Law Office, Yassmin Gonzalez–Velez, Nicolas Nogueras Law Offices, Kenneth Colon–Alicea, Maria D. Bertolez–Elvira, Jorge I. Peirats, Nestor Mendez–Gomez, Pietrantoni Mendez & Alvarez, Orlando H. Martinez–Echeverria, Orlando H. Martinez Law Office, Andres W. Lopez, Andres W. Lopez Law Office, San Juan, PR, for Defendants.

### OPINION AND ORDER

CASELLAS, Senior District Judge.

Pending before the Court is Attorneys Rafael Escalera–Rodríguez's, Thomas Trebilcock–Horan's, José R. Lázaro–Paoli's, and Enrique Nassar–Rizek's (herein "the attorneys") motion for reconsideration of the Court's Order of October 14, 2004 imposing

monetary sanctions on each and every one of them for engaging in judge-shopping (Docket # 18). After due consideration of the attorneys' motion and the applicable law, we find that the same should be **DENIED.**

The attorneys advance three well-versed arguments in support of their request. Namely, (1) that they did not engage in sanctionable misconduct in violation of federal rule 41(a), the Court's Local Rules, or any applicable precedent of this Court, the First Circuit, or the Supreme Court; (2) that the Court simultaneously announced and punitively applied a new rule concerning voluntary dismissals under Rule 41(a) in violation of established principles of fundamental fairness; and (3) that the process through which the sanctions were imposed did not comport with the requirements governing the imposition of punitive sanctions under the Court's inherent powers as established by the First Circuit.

First and foremost, the First Circuit has repeatedly recognized the troubling practice of judge-shopping. *Obert v. Republic Western Ins. Co.,* 398 F.3d 138 (1st Cir.2005); *Ellis v. United States,* 313 F.3d 636 (1st Cir.2003); *United States v. Brooks,* 145 F.3d 446 (1st Cir.1998); *In re Martinez–Cátala,* 129 F.3d 213 (1st Cir.1997); *In re Cargill, Inc.,* 66 F.3d 1256 (1st Cir.1995); *Tamburro v. E. Providence,* 1992 WL 380019, 1992 U.S. Appx. Lexis 32825 (1st Cir. Dec. 18, 1992).

■ Second, the Court understands that Rule 41(a) serves as a lawful vehicle for voluntarily dismissing suits and refiling the same at a later occasion. The Court is not blind to that. However, Rule 41 cannot serve the purposes for which the attorneys in this case used it. Simply put, to ignore the probability that the attorneys' actions in voluntarily withdrawing the case and instantly refiling were directed at obtaining a different judge, "after the judge decide[d] a major point against [ ] [them,] would be to blink reality." *In re Cargill, Inc.,* 66 F.3d at 1262. As adamantly stated by the First Circuit in *In re Cargill:*

[C]ourts cannot afford to spawn a public perception that lawyers and litigants will benefit by undertaking such machinations. . . . .

. . . We simply cannot afford to nourish the impression that the courts, as an institution, will bend over backward, overlook the obvious, and countenance sharp tactics merely because they are directed at a judge.

*Id.* at 1263–64 (*citing In re United Shoe Mach. Corp.,* 276 F.2d 77, 79 (1st Cir. 1960)("We cannot permit a litigant to test the mind of the trial judge like a boy testing the temperature of the water in the pool with his toe, and if found to his liking, decides to take a plunge."); *Reilly v. United States,* 863 F.2d 149, 160 (1st Cir.1988)(expressing that "when a trial judge announces a proposed course of action which litigants believe to be erroneous, the parties detrimentally affected must act expeditiously to call the error to the judge's attention or to cure the defect, not lurk in the bushes waiting to ask for another trial when their litigatory milk curdles")).

By sanctioning the appearing attorneys, the Court is not carving out any exceptions to Rule 41(a). At no time was the attorneys' ability to voluntarily withdraw the first action affected. It is the attorneys' attempt to utilize the undersigned and the otherwise unremarkable procedures to side step an adverse ruling and the time consuming appellate process that calls for the imposition of sanctions. *Ellis,* 313 F.3d at 647 (noting that "judges who too liberally second-guess their co-equals effectively usurp the appellate function and embolden litigants to engage in judge-shopping and similar forms of arbitrage"); *Specialized Plating, Inc. v. Fed. Envtl. Servs., Inc.,* 975 F.Supp. 397, 398 (D.Mass.1997)("The judicial system of dispute resolution is not cost free and those who abuse it through misconduct impose direct costs on the law abiding taxpayers who support it.").

■ The situation at hand is analogous to requests for recusal which, though expressly allowed, can likewise be abused raising the judge-shopping flag. *See Apple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 334 (2d Cir.1987)(stating that "a movant may not hold back and wait, hedging its bets against the eventual outcome"); *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1472 (11th Cir.1986)("Counsel, knowing the facts

claimed to support a § 455(a) recusal for appearance of partiality may not lie in wait, raising the recusal issue only after learning of the court's ruling on the merits."). We find the recusal case law to be persuasive and relevant since the actions described in said cases and the underlying concerns are the same. Therefore, although no Supreme Court or First Circuit case or applicable federal or local rule expressly states that attorneys may not use Rule 41(a) as a vehicle for judge-shopping, any active litigating attorney would know that judge-shopping is not acceptable and thus sanctionable.

The attorneys make much of a First Circuit trilogy in which, in essence, the First Circuit rejects district court imposed sanctions when said courts announced "new rules" and simultaneously imposed sanctions for violating the same. *United States v. 789 Cases of Latex Surgeon Gloves*, 13 F.3d 12 (1st Cir.1993)(requiring the attorney to pay the court reporter for a trial transcript that he did not order); *Boettcher v. Hartford Ins. Grp.*, 927 F.2d 23 (1st Cir.1991)(requiring the parties who settled the case after the jury had been called to pay the costs of the jury); *In re Richardson*, 793 F.2d 37 (1st Cir.1986)(sanctioning attorneys for failure to appear at a hearing on a matter that was of no interest to their clients). However, said cases are clearly distinguishable from the instant case. The attorneys in the cited cases could not have **reasonably** expected to be called to answer for their actions or inactions. Namely, withdrawing after the court had ordered the court reporter to prepare transcripts on an expedited basis, settling at the verge of trial, and not attending a hearing despite the client's lack of interest in the matter. Unlike said cases, in the instant case the Court did not announce a new rule, but merely reprimanded the attorneys for engaging in judge-shopping, an action which any practicing attorney could have reasonably expected to be sanctionable. *See Zebrowski v. Hanna*, 973 F.2d 1001, 1007 (1st Cir.1992)(limiting *Boettcher* to situations in which the district court assessed an "unusual

sanction" that the "parties would not likely have expected to suffer"). As such, the imposition of sanctions for judge-shopping in this case was not fundamentally unfair.

■ Finally, the attorneys argue that the Court did not comply with the First Circuit's requirements for imposing punitive sanctions under the Court's inherent powers,[1] to wit, providing an opportunity to be heard prior to the imposition of sanctions and making a finding of bad faith with "sufficient specificity." As to the latter, in its previous Order the Court was abundantly clear on its reasons for sanctioning the attorneys, namely, for engaging in judge-shopping. The Court specifically found that the attorneys had purposefully "abused the Court's processes by using Rule 41 as a loophole to circumvent an unfavorable ruling. The impropriety of Plaintiffs' actions is blatant." (Docket # 12 at p. 2).

■ As to the opportunity to be heard, the First Circuit has also expressed that "[a] hearing is not necessarily required [before the imposition of sanctions] where the court has full knowledge of the facts and is familiar with the conduct of the attorneys." *Specialized Plating, Inc. v. Fed. Envtl. Servs., Inc.*, No. 97–1343, 1997 WL 414102, at *1, 1997 U.S.App. Lexis 18195, at *3 (1st Cir. July 22, 1997)(*quoting In re Big Rapids Mall Assocs.*, 98 F.3d 926 (6th Cir.1996))(*citing Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 606–07 (1st Cir.1988)(finding that the Rule 11 sanctions motion's briefing process provided adequate notice and opportunity to be heard)). In the instant case, the attorneys responded to a motion accusing them of engaging in judge-shopping (Docket # 7 at p. 3; Docket # 10 at 99. 2–3). Thus, the attorneys had an opportunity to brief the issue and be heard prior to the imposition of sanctions. The Court cannot stress enough the facts that led to the Court's conclusion that the attorneys had unequivocally engaged 'in judge-shopping. Namely, their voluntary withdrawal the day after the denial of their

---

1. The attorneys' conduct is also sanctionable under Rule 11 of the Federal Rules of Civil Procedure and under Section 1927 of Title 28 of the United States Code which states that: "Any attorney ... who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

motion for reconsideration of the denial of the preliminary injunction and **their re-filing only one hour and fourteen minutes later seeking the exact same relief.** The latter being the questionable maneuver leading to the imposition of sanctions. The attorneys' attempt to use Rule 41(a) as a scapegoat is unconvincing.

Faced with the appearing attorneys' blatant and otherwise **unexplainable** course of action, the Court, in its unwavering duty to be vigilant of abuses and misuses of its resources, decided that it had to deter said conduct by sanctioning the appearing attorneys and any other practitioner that ventures down the same path. As expressed by Learned Hand "the highest courage is, as Holmes used to say, to stake your all upon a conclusion which you are aware tomorrow may prove false." Irving Dilliard, *The Spirit of Liberty* (1960). Accordingly, the attorneys' motion for reconsideration must be **DENIED.**

**SO ORDERED.**

